IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NORTH AMERICAN SPECIALTY
FLOORING, INC. dba OSST USA,
JBA MANAGEMENT SERVICES, LLC,
MARK BEZIK, and PAUL ROEDER,

               Plaintiffs,

   v.

HUMANE MANUFACTURING
COMPANY, LLC.,

               Defendant.

OPINION and ORDER

22-cv-244-jdp

---

    This breach of contract case arises from a written agreement between plaintiff North American Specialty Flooring, Inc. (NASF) and defendant Humane Manufacturing Company, LLC. The written agreement gave Humane the option to purchase NASF within a year of signing. When Humane did not exercise the option by its deadline to do so, plaintiffs—NASF, its officers, and an affiliated company—sued Humane, contending that the terms of the agreement required Humane to go through with the purchase.

    Humane moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), Dkt. 12, and the court will grant the motion. The plain language of the contract unambiguously grants Humane the option to purchase NASF, and an option is merely an offer to contract. Plaintiffs contend that the option provision is ambiguous in light of Humane's prior assurances that it wished to buy NASF. But extrinsic evidence cannot be used to create an ambiguity where none exists in the text of the agreement. Humane did not breach the contract or the duty of good faith and fair dealing by declining to exercise the option to purchase NASF. The court will dismiss the case.

BACKGROUND

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court may consider "the complaint, the answer, and any written instruments attached as exhibits." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). The court draws the following facts from plaintiffs' amended complaint, Dkt. 19, and the attached exhibits for the purpose of deciding Humane's motion.

Plaintiff North American Specialty Flooring (NASF) is a company that specializes in installing sports flooring, such as running tracks, game courts, and weightroom surfaces. The company is owned by plaintiffs Mark Bezik and Paul Roeder. Roeder is also the sole member of JBA Management Services, LLC, a construction company that works on installation projects with NASF. NASF had an exclusive distributorship agreement with King Arthur Industries, a flooring manufacturer based in Taiwan.

Defendant Humane Manufacturing Company manufactures and distributes rubber mat flooring in several different markets, including the fitness industry. Humane and NASF began negotiating a possible acquisition of NASF in late 2019. The parties discussed an arrangement in which Humane would purchase NASF and its exclusive distribution rights with King Arthur, and Humane would hire JBA to assist in installing King Arthur products.

The parties hoped to close on the acquisition in early 2020, but the closing was delayed by the COVID-19 pandemic. Humane informed NASF that it was "taking a pause" on new acquisitions because of the pandemic. Dkt. 19, ¶ 17. Humane proposed that the parties postpone closing by a year—until 2021—and assured NASF that it was still interested in the purchase. The parties continued to work through the details of the agreement over the

following months. In their conversations, Humane "repeatedly reaffirmed its intent to acquire *all* assets of NASF." *Id.*, ¶ 20 (emphasis in original).

After several months of back and forth, the parties entered a written agreement in May 2020. The agreement is on the docket at Dkt. 19-9. Plaintiffs refer to this document as the "Interim Agreement," although the document is titled only "Agreement." The agreement, by its terms, is primarily a distribution agreement. The contract provides that NASF would arrange for Humane to acquire the exclusive right to distribute King Arthur products, ¶ 1; Humane would pay NASF a royalty for the sale of King Arthur products, ¶ 2; Humane would hire Bezik as an employee, ¶ 4; and Humane would pay JBA for consulting services related to the installation of King Arthur products, ¶ 7, Dkt. 19-7 (consulting agreement).

The contract also includes a provision entitled "NASF Option," which reads as follows:

> (a) Humane has the option, upon written notice to NASF, to enter into a purchase agreement with NASF in form and substance as set forth on Exhibit C (the "NASF APA") at any time before May 1, 2021 (the "NASF Option").

> (b) During the period in which the NASF Option is in effect, NASF agrees to continue to operate its business in the ordinary course and not enter into any agreement or discussions to sell it to a third party.

> (c) If Humane has not exercised the NASF Option before May 1, 2021, Humane may extend the NASF Option through January 1, 2022, upon payment to NASF of an amount equal to Two Hundred Thousand Dollars ($200,000).

¶ 5. Plaintiffs understood the option provision to "memorialize the parties' prior conversations and agreements" that closing on the NASF acquisition was being delayed by one year. Dkt. 19, ¶ 42.

Humane began distributing King Arthur products pursuant to the terms of the written agreement. Over the next year, Humane repeatedly told plaintiffs that it planned to purchase

NASF. *See id.*, ¶ 47. When the deadline for Humane to exercise the option passed in May 2021, Humane "refused to execute the [purchase agreement]." *Id.*, ¶ 48. Plaintiffs do not say whether Humane paid NASF to extend the option to January 2022 pursuant to ¶ 5(c). But when January 2022 arrived, Humane again refused to purchase NASF's remaining assets. Plaintiffs told Humane that "the NASF Option" was "simply an avenue for Humane to close sooner than May 1, 2021, and no later than January 1, 2022[.]" *Id.*, ¶ 50. In response, Humane indicated that it had no intention to execute the purchase agreement and that it would retain the exclusive distribution rights with King Arthur. Soon after, Humane terminated Bezik's employment.

## ANALYSIS

Plaintiffs assert claims for breach of contract and breach of the duty of good faith and fair dealing.[1] Humane moves for judgment on the pleadings on all of plaintiffs' claims under Rule 12(c). A 12(c) motion is decided under the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *St. John v. Cach, LLC,* 822 F.3d 388, 389 (7th Cir. 2016). To survive Humane's motion, plaintiffs' complaint must allege facts to plausibly suggest that plaintiffs are entitled to relief. *Id.* The court accepts the factual allegations in the complaint as true and draws all reasonable inferences in plaintiffs' favor. *Hayes v. City of Chi.,* 670 F.3d 810, 813 (7th Cir. 2012). But the court need not ignore allegations that undermine plaintiffs' claims. *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th Cir. 1989).

---

[1] Plaintiffs also assert claims for (1) a declaratory judgment that Humane is required to purchase NASF and (2) an order directing Humane to perform its obligations under the contract. Declaratory judgment and specific performance are forms of relief, not independent causes of action, so the court need not separately consider those requests for relief.

A.  **Breach of contract**

The substantive question for plaintiffs' breach of contract claim is whether the parties' written agreement requires Humane to purchase NASF outright by no later than January 1, 2022, as plaintiffs contend. Humane contends that the case can be resolved on the pleadings because the plain language of the contract does not obligate Humane to exercise the option to execute the purchase agreement. But plaintiffs counter that the contract is ambiguous because their interpretation is, at least, a reasonable interpretation of the option provision in light of Humane's repeated representations that it planned to buy NASF. If the contract is ambiguous. that ambiguity would have to be resolved after the parties develop any evidence that might relate to the issue. *First Bank & Trust v. Firstar Info. Servs. Corp.*, 276 F.3d 317, 322 (7th Cir. 2001) (citing *Lakeshore Commercial Fin. Corp. v. Drobac*, 107 Wis. 2d 445, 319 N.W.2d 839, 843 (1982)).

Both sides apply Wisconsin law to plaintiffs' breach of contract claims, consistent with the choice of law provision in the parties' written agreement. *See* Dkt. 19-11, ¶ 10. The primary goal of contract interpretation is to give effect to the parties' intent, as expressed in the contractual language. *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 22, 326 Wis. 2d 300, 786 N.W.2d 15. The court begins with the plain language of the contract. *First Bank & Trust*, 276 F.3d at 322 (citing *Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 485 N.W.2d 426, 432 (Ct. App. 1992)). "If the contract is unambiguous, [the court's] attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." *Huml v. Vlazny*, 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807. A contract is ambiguous if it is reasonably susceptible to more than one interpretation. *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990).

The parties' written agreement is not ambiguous. The contract expressly provides that Humane "has the option" to purchase NASF prior to May 1, 2021. Dkt. 19-9, ¶ 5. The Wisconsin Supreme Court has explained that an "option is not a sale. It is not even an agreement for a sale. . . . It is a continuing offer to sell which may or may not, within the time specified at the election of the optionee, be accepted." *Megal v. Kohlhardt*, 11 Wis. 2d 70, 83, 103 N.W.2d 892, 898 (1960) (quoting 8 Thompson, Real Property (perm. ed.), p. 505, sec. 4569 (alterations in original)). An option does not ripen into a contract of sale unless the offeree accepts the offer of purchase. *McLellan v. Charly*, 2008 WI App 126, ¶ 25, 313 Wis. 2d 623, 637, 758 N.W.2d 94, 101. The option provision in this contract required NASF to hold open the offer of sale until May 1, 2021 (or until January 2022 in exchange for additional consideration). But nothing in the contract states that Humane had to exercise the option before it expired. Plaintiffs' proposed interpretation runs contrary to the plain text of the agreement: an option that a party is required to execute is not an "option" at all. Humane did not accept NASF's offer to purchase NASF, so the option did not ripen into a contract of sale.

Plaintiffs resist this conclusion and provide three arguments why the option provision is ambiguous: (1) other provisions in the contract contemplate Humane closing on the sale; (2) the provision is ambiguous in light of the parties' prior negotiations; and (3) allowing Humane to avoid purchasing NASF would be an absurd result. For the reasons that follow, none of plaintiffs' arguments are persuasive.

### 1.  Other provisions in the contract

First, plaintiffs identify other provisions in the contract that, they contend, demonstrate that the parties intended for Humane to close on the sale. Specifically, paragraph 6(b) of the agreement provides that Humane will provide products at certain prices to JBA "[u]ntil the

earlier of January 1, 2022, or the closing of the transactions contemplated by the NASF [purchase agreement]." Dkt. 19-9, ¶ 6. The paragraph further states that sales to JBA will be made through NASF "[u]ntil the NASF Option is exercised" but that sales to JBA will be on Humane's standard terms "[a]fter the NASF Closing." *Id.* But the fact that the contract contemplates what will happen if Humane exercises its option does not suggest that Humane is required to exercise the option. Put another way, that the parties agreed to conduct their affairs a certain way "until" the closing does not mean that the closing is certain to happen. The use of conditional language in paragraph 6(b) is consistent with Humane having the option to execute the purchase agreement.

Moreover, another provision of the contract cuts against plaintiffs' proposed interpretation. Paragraph 2 provides that Humane will pay NASF a royalty for the products it purchases from NASF "unless and until the NASF Option" is exercised. Subparagraph 2(c) states that NASF may receive "additional Royalty Payments" from Humane "for each of the first five (5) Fiscal Years after the date of this Agreement" if certain conditions are met. But under paragraph 2, the royalty payments would end if Humane exercised the option to purchase NASF. The option expired in January 2022, less than two years after the parties signed the contract. It would not make sense to specify how Humane was to pay royalties five years from now if it was certain that Humane would acquire NASF and end the royalty after only two.

2. **The parties' prior negotiations**

Second, plaintiffs contend that it is reasonable to interpret the option provision to create a binding contract of sale in light of Humane's repeated representations before and after signing that it wished to buy NASF within a year of signing. Normally, evidence of prior

understandings between the parties to a written contract is barred by the parol evidence rule. *See Fed. Deposit Ins. Corp. v. First Mortg. Inv'rs,* 76 Wis. 2d 151, 156, 250 N.W.2d 362, 365 (1977). But plaintiffs contend that the parol evidence rule does not apply because the contract is not fully integrated, meaning that the parties did not intend for the contract to be the full and final expression of their agreement. *See id.* Plaintiffs argue that the written agreement "was simply the first part of their broader deal" for the sale of NASF to Humane, so they can offer parol evidence to show that the parties' written agreement is ambiguous. Dkt. 16, at 10 (plaintiffs' brief).

Plaintiffs' argument implicates the partial integration rule, which applies to written contracts that are incomplete in that only part of the agreement has been reduced to writing. *In re Spring Valley Meats, Inc.,* 94 Wis. 2d 600, 607, 288 N.W.2d 852, 855 (1980). If the contract is only partially integrated, the court may consider parol evidence of "contemporaneous or prior agreements that supplement, but do not conflict with, the contract." *Town Bank v. City Real Estate Dev., LLC,* 2010 WI 134, ¶ 37 n.3, 330 Wis. 2d 340, 358, 793 N.W.2d 476, 485.

The problem for plaintiffs is that they do not argue or allege that there was a contemporaneous or prior agreement that Humane would purchase NASF, separate from the parties' written contract. Plaintiffs' breach of contract claim is expressly based on an alleged breach of the parties' written agreement. *See* Dkt. 19, ¶ 59–63. Plaintiffs are not trying to supplement the contract with a term from a separate oral or written agreement; rather, they are attempting to use parol evidence to show that the contract's option provision itself can be interpreted to create a binding contract of sale. *See id.,* ¶ 39 ("The Interim Agreement reflected

the parties['] original deal"); ¶ 45 (option provision "memorialized the parties' prior conversations and agreements" that Humane would buy NASF).

This is not a proper use of parol evidence. A party may not use parol evidence to vary or explain the meaning of unambiguous written terms. *Schmitz v. Grudzinski*, 141 Wis. 2d 867, 872, 416 N.W.2d 639, 641 (Ct. App. 1987). And parol evidence cannot be used to create an ambiguity where none exists in the agreement's plain text. *See Prod. Credit Asso. v. Rosner*, 78 Wis. 2d 543, 549, 255 N.W.2d 79, 81 (1977). Instead, parol evidence may clarify only ambiguities that already exist in the written document. *Id.* The parol evidence rule serves two main purposes: it promotes the reliability of written contracts and reduces the risk that juries will be misled by statements or negotiations that took place before the parties entered into a contract. *Town Bank,* 2010 WI 134, ¶ 36. Allowing plaintiffs to use statements made during negotiations to alter the plain meaning of the parties' written contract would frustrate both of those purposes. The written contract unambiguously grants Humane the option to purchase NASF within a set time, and an option is not a contract of sale. Plaintiffs cannot use extrinsic evidence to explain the meaning of that provision or to show that the provision is ambiguous.

### 3. Absurd results

Third, plaintiffs argue that it would be an absurd result for Humane to acquire the rights to distribute King Arthur products without buying the rest of NASF's assets. Generally, a contract should be given a construction which will make it a rational business instrument. *Bruns v. Rennebohm Drug Stores, Inc.*, 151 Wis. 2d 88, 94, 442 N.W.2d 591, 593 (Ct. App. 1989). Plaintiffs argue that it would be irrational for them to relinquish their distribution rights—alleged to be "NASF's most valuable business asset"—unless they were guaranteed to receive a $2.5 million payout after Humane executed the purchase agreement.

Although there is a general principle that courts should not interpret a contract literally if it would produce absurd results, that principle is "not a species of paternalism." *Beanstalk Grp. v. Am Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002). Where the text of the agreement is not susceptible to other interpretations, the plain text governs, even if the contract disfavors one of the parties. *Trapp v. New Birdsall Co.*, 109 Wis. 543, 561, 85 N.W. 478, 485 (1901). "If parties, with their eyes open, will make unreasonable contracts, courts cannot save them from the consequences thereof." *Id*.

Here, the consequences of the parties' written agreement are not so absurd that the court can disregard the contract's plain language. This is not a situation where Humane got something for nothing. In exchange for the distribution rights, plaintiffs receive a perpetual royalty of 10 percent for the products Humane purchases from King Arthur, Dkt. 19-9, ¶ 2(b), with additional royalties if Humane purchases products above a certain threshold, ¶ 2(c). In addition, Humane hired Bezik as an employee, ¶ 4, and it agreed to use JBA's services when installing King Arthur products. A rational person in plaintiffs' position could intend to enter the arrangement expressed in the text of the agreement. Even if the court accepts as true that the deal is unfavorable to plaintiffs, plaintiffs provide no authority that a court can disregard the plain language of a contract on that ground.

Because Humane complied with the plain language of the parties' written agreement, it is entitled to judgment on the pleadings on plaintiffs' breach of contract claim.

## B. Breach of the duty of good faith for fair dealing

As for plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, plaintiffs contend that Humane engaged in bad faith by "luring Plaintiffs into transferring [their distribution] rights for only a fraction of the price Humane had previously agreed to

pay." Dkt. 19, ¶ 66. To state a claim for a breach of the duty of good faith under Wisconsin law, the plaintiff must allege that a valid contract with express, definite, enforceable terms exists, and that the breaching party acted without good faith in its performance of that contract. *Reetz v. Advocate Aurora Health, Inc.*, 405 Wis. 2d 298, 328, 983 N.W.2d 669, 685 (Ct. App. 2022). "The good faith and fair dealing obligations must relate to the performance of the contract." *Id.* A party can violate this duty by performing their obligations in a way that violates the spirit of the agreement, even if he or she complies with the agreements' express terms. *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶27, 348 Wis. 2d 360, 378, 842 N.W.2d 240, 250. To state a claim for the breach of good faith and fair dealing, plaintiffs must allege facts to show that Humane denied them the intended benefits of the contract. *See Sacred Heart Hosp. v. Marshfield Clinic Health Sys.*, 2019 WI App 1, 385 Wis. 2d 211, 923 N.W.2d 174.

Plaintiffs have not stated a claim for breach of the duty of good faith and fair dealing. Plaintiffs' allegations suggest that Humane was not forthright about its intentions during negotiations or after the contract was executed. But the duty of good faith, "even expansively conceived, is not a duty of candor." *Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 594 (7th Cir. 1991). More important, however, is that plaintiffs' allegations aren't about how Humane performed its obligations under the contract. Plaintiffs contend that Humane's behavior "violated the spirit of the negotiations" between the parties, Dkt. 16, at 16. But nothing in the express terms of the agreement required Humane to exercise the option or to inform plaintiffs whether it planned to exercise it, so it did not breach the duty of good faith by failing to do those things. *See Beidel,* 2013 WI 56, ¶ 29 ("A party may not, however, employ the good faith and fair dealing covenant to undo express terms of an agreement."). Humane did not deny

plaintiffs the intended benefits of their written agreement, so Humane is entitled to judgment on the pleadings on this claim, too.

                                    ORDER

        IT IS ORDERED that defendants' motion for judgment on the pleadings, Dkt. 12, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

        Entered July 25, 2023.

                                    BY THE COURT:

                                    /s/

                                    _____
                                    JAMES D. PETERSON
                                    District Judge